## KOSCIE MARSH v. VIRGINIA RETTA HOLM.[1]

October 10, 1952.

No. 35,951.

Terrance S. O'Toole, for petitioner.

J. A. A. Burnquist, Attorney General, George B. Sjoselius, Deputy Attorney General, and Donald C. Rogers, Assistant Attorney General, for respondent.

MAGNEY, JUSTICE.

Respondent was appointed secretary of state of the state of Minnesota on September 15, 1952, and as such is the duly qualified

[1]Reported in 55 N. W. (2d) 302.

and acting secretary of state. Prior thereto she was a candidate at the 1952 state primary election for nomination for the office of secretary of state for both the long and short terms of that office. She was married to the late Mike Holm, who for a number of years was secretary of state of the state of Minnesota, and during the years of their marriage she was known as Mrs. Mike Holm. Since the death of her husband, she has continued to use the name of Mrs. Mike Holm and is commonly known as Mrs. Mike Holm. She filed her candidacy under her married name of Mrs. Mike Holm. Her legal name, however, is Virginia Holm.

As Mrs. Mike Holm, she was duly nominated at the 1952 primary election held on September 9, 1952, as the Republican candidate for secretary of state for both the long and the short term. On September 23, 1952, she was notified thereof. At the said primary election held on September 9, 1952, petitioner Koscie Marsh was duly nominated as the candidate of the Democratic-Farmer-Labor party for the office of secretary of state. He contends that respondent as secretary of state is about to commit a wrongful act by placing and causing to be printed upon the Consolidated General Election ballot for the general election to be held on November 4, 1952, the name of Mrs. Mike Holm as the Republican candidate for the office of secretary of state of the state of Minnesota, and he requests that this court order and direct respondent forthwith to desist and refrain from placing and causing to be printed the name of Mrs. Mike Holm upon the ballots to be used in the said forthcoming general election, and that she be ordered to use the candidate's true and legal name, Virginia Retta Holm, upon said ballots.

Upon motion of petitioner, this court on October 6, 1952, issued an order directing respondent as secretary of state of the state of Minnesota forthwith to correct the error, which it is alleged in the affidavit of petitioner is about to occur, and to desist from placing upon the ballots for the general election the name of Mrs. Mike Holm and to place and cause to be printed thereon the name Virginia Retta Holm, or show cause to this court why she should not do so.

Respondent thereupon made a motion to have the order to show cause heretofore issued herein discharged on the ground that the petitioner has not proceeded with diligence and expedition in asserting his alleged cause of action and that the action was commenced too late to procure the relief sought for the reason that before the order to show cause issued herein was served upon respondent there had been delivered to the county auditor of Hennepin county 6,000 ballots for use in sending ballots to members of the armed services and to the county auditor of Ramsey county 3,000 ballots for similar use.

Further facts should be stated. Arnold Gandrud, chief clerk in the office of the secretary of state of the state of Minnesota in charge of all matters relating to elections, by affidavit states that on Monday, October 6, 1952, prior to the service of the order to show cause herein, there had been delivered to the county auditor of Ramsey county 3,000 ballots and 6,000 ballots had been sent to the county auditor of Hennepin county, which were delivered to said county auditor; that after the ballots are received from the printer it is necessary to pack and send to each county auditor the number of ballots required by him for use in his county; that after receipt of the ballots by the county auditor he must pack and deliver to each precinct in his county the number of ballots required by the respective precincts; that it will take five days working overtime to pack and deliver the 2,200,000 ballots required to the respective county auditors; and that the secretary of state is required to deliver such ballots to the county auditor not less than 15 days before the election day. The printer charged with the responsibility for the execution of the order of the state of Minnesota for the printing and delivering of the ballots involved in this action states in an affidavit attached to the motion to discharge this order to show cause that under the contract with the state of Minnesota delivery of the ballots must be made not later than October 15, 1952; that upon obtaining the contract the work production schedule was made and that by devoting all available facilities delivery would be made on October 15, 1952; that if there is no change in the copy of the ballot,

the delivery date of the ballots will be delayed by as many days as will lapse from October 6, 1952, to the date of resumption of printing plus two additional days; that if there is a change in the copy of the ballot, the delivery date of the ballots will be delayed by an additional one and one-half days for each day that will elapse between October 6, 1952, and the date of resumption of work upon the ballots; and that in addition it will be necessary to work on Saturdays and Sundays which will increase the cost, according to available information, at least $1,375.

The matter before us is whether the order to show cause heretofore issued herein should be discharged on the grounds set out. We are not considering the merits of the claim.

Respondent filed for the office of secretary of state under the name Mrs. Mike Holm. From the time of filing it was therefore known or readily ascertainable that she was seeking to be elected to the office of secretary of state under the name of Mrs. Mike Holm. During the primaries no one challenged the designation. At the primaries held on September 9, 1952, she was nominated as the Republican candidate for the office of secretary of state under the name of Mrs. Mike Holm, and on September 23, 1952, she was notified that as Mrs. Mike Holm she had been duly nominated as Republican candidate for that office. After the returns were in from the primary election, petitioner of course knew that his opponent at the general election would be respondent and that she had been nominated under the name of Mrs. Mike Holm. Following that, and following the return of the canvassing board, petitioner chose to do nothing until October 6, 1952, although he knew all the facts. He has given no excuse why he did not proceed as soon as practicable after he had possession of these facts.

One who intends to question the form or contents of an official ballot to be used at state elections must realize that serious delays, complications, and inconvenience must follow any action he may take and that, unless a reasonable valid excuse be presented by him indicating why he did not act expeditiously, he should not be permitted to complain. It is important that such persons move ex-

peditiously so ballots can be printed and distributed according to the requirements of the law. In our opinion, petitioner has not proceeded with diligence and expedition in asserting his claim.

It is ordered that the order to show cause issued herein on October 6, 1952, be and the same is hereby discharged.

Order to show cause discharged.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that there was not an unreasonable delay in the commencement of these proceedings. Prior to the meeting of the state canvassing board it could not have been determined under the laws of this state whether either petitioner or respondent was qualified under the state election laws to be designated as the nominee of his or her political party on the final election ballot. The state canvassing board met and certified the results of the primary election on September 23, 1952. The present proceedings were instituted October 6, 1952. The intervening 12-day period, in my opinion, should not be deemed unreasonable, particularly since any resulting harm, or disenfranchisement of voters serving in the armed forces, is not clearly established.

M. S. A. 202.04 by its terms clearly limits the privilege extended therein to "married women" only. A "married woman," as defined in 55 C. J. S., p. 953, is: "A woman who has a husband *living* and not divorced; a feme covert." (Italics supplied.) In Matter of Kaufman, 131 N. Y. 620, 621, 30 N. E. 242, 15 L. R. A. 292, the court held that a widow is an "unmarried woman," within the meaning of Rev. Stat. of New York (7 ed.) part 2, c. 6, title 1, art. 3, § 44, providing that "a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." 2 Pope, Legal Definitions, p. 935, defines the term "married" as: "A man who has a wife, or a woman who has a husband, is married. One without a husband or wife is not married—is single."

These authorities strongly indicate that the term "married woman" would not include a woman holding the status of either a widow or divorcee. To hold that the legislature intended that the

term should embrace either classification would constitute legislation by judicial construction.

MR. CHIEF JUSTICE LORING took no part in the consideration or decision of this case.