**Harlan CLARK, Petitioner,**

v.

**Thomas REDDICK, Douglas County Auditor/Treasurer, and Karen Busch, Todd County Auditor/Treasurer, Respondents.**

No. A10–1527.

Supreme Court of Minnesota.

Dec. 9, 2010.

R. Reid LeBeau II, Jacobson Buffalo Magnuson Anderson and Hogen, P.C., St. Paul, MN; and David W. Asp, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, for petitioner.

Christopher D. Karpan, Douglas County Attorney, Alexandria, MN, for respondent Thomas Reddick.

## OPINION

**PER CURIAM.**

Petitioner Harlan Clark filed this action seeking to remove the name of Bert Pexsa from the 2010 general election ballot as a candidate for State Representative, House District 11B, on grounds that the Douglas County Auditor erred in accepting for filing Pexsa's affidavit of candidacy without a nominating petition. Clark asserts that the Auditor further erred in allowing Pexsa to amend his affidavit of candidacy after the close of the candidate filing period. Because we concluded that Clark's petition is barred by the doctrine of laches, we issued an order on September 13, 2010, denying the petition, with this opinion to follow.

On June 1, 2010, the last day of the filing period for elective office, Bert Pexsa filed an affidavit of candidacy with the Douglas County Auditor, seeking to be placed on the 2010 general election ballot as a candidate for State Representative, House District 11B. Pexsa had previously, but unsuccessfully, sought the nomination of the Republican Party for that office. Pexsa's affidavit of candidacy identified his political party or affiliation as "Independent Party."

After receiving Pexsa's affidavit of candidacy, the Douglas County Auditor's office notified the Secretary of State that Pexsa had filed for office as "Independent." On June 10, the Secretary of State's office inquired of the Douglas County Auditor's office whether, as an independent candidate, Pexsa had filed a nominating petition. Candidates for partisan office are nominated by one of the major political parties in Minnesota by prevailing in that party's primary election. *See* Minn.Stat. § 204B.03 (2008). There are three major political parties in Minnesota: the Democratic–Farmer–Labor Party, the Republican Party, and the Independence Party. *See* Minn.Stat. § 200.02, subd. 7 (2008) (defining "major political party"). Candidates for partisan office who do not seek the nomination of one of the three major political parties are nominated by petition. Minn.Stat. § 204B.03. Pexsa did not file a nominating petition with his affidavit of candidacy.

At the suggestion of the Secretary of State's office, the Douglas County Auditor's office contacted Pexsa. On June 14, Pexsa crossed out the words "Independent Party" on his affidavit of candidacy and wrote in "Independence Party" instead. In addition, Pexsa filed a separate affidavit indicating that he had "corrected" his affidavit of candidacy "for the purpose of spelling the political party correctly" and to "clarify[ ] his original intent to file as a candidate for the 'Independence Party.' "[1] On June 14, the Douglas County Auditor reported to the Secretary of State that Pexsa was a candidate of the "Independence Party" and, based on that information, the Secretary of State's office changed Pexsa's party status to "Independence."

---

1. Clark suggests that Pexsa's only avenue for changing his party affiliation after June 1 was to file a petition under Minn.Stat. § 204B.44 (2008). But in *Schroeder v. Johnson,* 311 Minn. 144, 145–46, 252 N.W.2d 851, 852 (1976), we held that the predecessor to Minn. Stat. § 204B.44, Minn.Stat. § 203A.18 (1976), was "intended to protect potential candidates for public office from the errors and omissions" of election officials, not "to correct errors or omissions resulting only from the candidate's inadvertence during the filing procedure." We therefore held that a candidate could not use a section 204B.44 petition to change the district in which she was running from House District 43B, which she had "inadvertently" entered on her affidavit of candidacy, to House District 43A. *Schroeder,* 311 Minn. at 144, 252 N.W.2d at 851.

There was no primary election for House District 11B. By operation of law, Pexsa was declared the nominee of the Independence Party for State Representative, House District 11B, upon the close of the filing period. *See* Minn.Stat. § 204D.03, subd. 3(a) (2008).

On September 2, 2010, 3 months after the filing period closed, Clark filed a petition with our court under Minn.Stat. § 204B.44 (2008), seeking an order striking Pexsa's name from the 2010 general election ballot. Clark, a resident of House District 11B and the deputy chair of the Republican Party in Todd County, asserts that he first became aware of the alleged statutory violation on August 27, 2010.

█ In his petition, Clark alleges that Pexsa's statement of political party or principle on his affidavit of candidacy as "Independent Party" meant that Pexsa had declared himself a candidate of either a non-major political party or no political party at all, and therefore Pexsa could appear on the general election ballot only if nominated by petition. Clark further alleges that the Douglas County Auditor was barred from allowing Pexsa to amend his affidavit of candidacy after the filing period for state offices closed on June 1, 2010.

The court received a response to the petition from the Douglas County Auditor and a reply in support of the petition from Clark. In addition, the parties[2] stipulated to certain facts. Based on the timing of the petition and the uncontroverted facts, we conclude that the petition is barred under the doctrine of laches.

█ Laches is an equitable doctrine which applies to " 'prevent one who has not been diligent in asserting a known right

from recovering at the expense of one who has been prejudiced by the delay.' " *Winters v. Kiffmeyer*, 650 N.W.2d 167, 169 (Minn.2002) (quoting *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953)). We have recognized that "a party is not guilty of laches until he discovers the mistake, or until he is chargeable with knowledge of facts from which, in the exercise of proper diligence, he ought to have discovered it." *Lindquist v. Gibbs*, 122 Minn. 205, 208, 142 N.W. 156, 158 (1913). In the context of an action to rescind a contract on grounds of fraud, we observed that "the defrauded party must be diligent and make such inquiry and investigation as the known facts and circumstances reasonably suggest or permit." *Briggs v. Buzzell*, 164 Minn. 116, 120, 204 N.W. 548, 549 (1925). When "the facts are a matter of public record and an inspection of the record is suggested by ordinary prudence," we require "[a] greater degree of diligence." *Id.* at 120–21, 204 N.W. at 549.

Clark argues that he should not be charged with a duty to inspect the public record until he had reason to suspect that county officials had violated election laws. Clark asserts that based on the information on the Secretary of State's website, he reasonably believed—at least until informed otherwise on August 27, 2010— that Pexsa had filed on June 1, 2010, to run as a candidate of the "Independence Party" and he had no reason to suspect— again, at least until August 27—that the Douglas County Auditor had acted improperly in accepting Pexsa's candidate filing.

But even under the standard advocated by Clark, his duty to inquire was triggered on June 14. Clark asserts that the Douglas County Auditor was barred by state

---

**2.** Although served with the petition, neither the Todd County Auditor nor candidate Pexsa appeared in this matter.

law from altering, or allowing Pexsa to alter, the affidavit of candidacy after the close of the filing period on June 1. It is undisputed that Pexsa's original affidavit of candidacy was publicly available to Clark and others once it was filed on June 1, and Pexsa's amended affidavit of candidacy was publicly available between June 14 and the filing of Clark's petition with this court. Moreover, Clark stipulated that on June 14, 2010, Pexsa's party status at the Secretary of State's office changed to "Independence." A change in Pexsa's party status to "Independence," occurring 2 weeks after the deadline for filing for elective office, should have aroused Clark's suspicions and should have been sufficient, even under Clark's argument, to trigger a duty on the part of a political opponent to inquire into the circumstances of the change.

We have repeatedly stressed the need for diligence and expeditious action by parties bringing ballot challenges. *See, e.g., Clark v. Pawlenty,* 755 N.W.2d 293, 299–300 (Minn.2008) (noting that "[m]ore than 50 years ago we declined to consider the merits of a ballot challenge because 'the petitioner ha[d] not proceeded with diligence and expedition in asserting his claim'" (quoting *Marsh v. Holm,* 238 Minn. 25, 29, 55 N.W.2d 302, 304 (1952) (second alteration in original))). We have explained that litigation involving ballot challenges necessitates close attention to matters of timing: "'The very nature of matters implicating election laws and proceedings routinely requires expeditious consideration and disposition by courts facing considerable time constraints imposed by the ballot preparation and distribution process.'" *Id.* at 300 (quoting *Peterson v. Stafford,* 490 N.W.2d 418, 419 (Minn. 1992)). Our longstanding concern for diligence and timeliness in the initiation of ballot challenges warrants particular attention by those who bring such actions.

We conclude that the delay of more than 2 months between the change in Pexsa's party affiliation and the filing of the petition in this case was unreasonable.

■ Determining that the delay in filing the petition in this case was unreasonable is not the end of our inquiry. In evaluating a claim of laches, "the practical question in each case is whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Fetsch v. Holm,* 236 Minn. 158, 163, 52 N.W.2d 113, 115 (1952). In *Clark v. Pawlenty,* 755 N.W.2d at 301, we considered prejudice to "respondents, other election officials, other candidates, and the Minnesota electorate in general."

In his response to the petition here, the Douglas County Auditor asserts that in order to have ballots available to absentee voters by Friday, September 17, 2010, as required by Minn.Stat. § 203B.081 (2008), the County was required to send a final ballot proof to its printer by Friday, September 10. At oral argument on September 13, the Douglas County Auditor informed the court that the County had delayed sending a final ballot proof to the printer in anticipation of a ruling by the court and that until it received official ballots from the printer that complied with the court's ruling, it would distribute unofficial ballots to absentee voters, as permitted by Minn.Stat. § 203B.06, subd. 3a (2008). Nothing in the record before us indicates whether Todd County, which also lies within House District 11B, similarly delayed printing official ballots.

The Douglas County Auditor asserts without contradiction that since filing the affidavit of candidacy, Pexsa actively campaigned for the office, distributing hun-

dreds of election signs in Douglas and Todd Counties and participating in numerous candidate activities. Were we to order Pexsa's name stricken from the general election ballot, he "would be denied the right to run for an office for which [he] has already expended time, energy, and resources," *Clark v. Pawlenty,* 755 N.W.2d at 302, except as a write-in candidate. In addition, the Independence Party would be denied a candidate for the office on the general election ballot.

Finally, as we noted in *Clark v. Pawlenty,* "we cannot ignore the potential prejudice to the electorate in general" resulting from "last-minute changes" to the ballot. *Id.* at 303. Given that Pexsa's status as the Independence Party candidate for State Representative, House District 11B, has been a matter of public record for months, and given that Pexsa campaigned publicly for the office, if Pexsa's name were stricken from the ballot before the general election, voters may not understand that they could still vote for him as a write-in candidate.

Our disposition of this matter without reaching the merits of Clark's petition does not connote our approval of the Douglas County Auditor's actions. But we conclude that under the circumstances presented here, it would be inequitable to strike candidate Pexsa's name from the 2010 general election ballot. We therefore deny the petition.

Petition denied.