Stephen W. CARLSON, an individual, eligible, registered voter and nominee for U.S. House of Representatives, CD4–MN on Nov. 6, 2012 ballot, Petitioner,

v.

Mark RITCHIE, an individual and in his official capacity as Minnesota Secretary of State, Elena L. Ostby, an individual and in her official capacity as Ramsey County District Court Judge, Mary Jurek, an individual and in her official capacity as Ramsey County Deputy Court Administrator, Minnesota State Canvassing Board, Minnesota DFL Party, Betty McCollum, Minnesota DFL candidate and nominee for CD4 U.S. House of Representatives, Respondents.

No. A12–2286.

Supreme Court of Minnesota.

May 22, 2013.

Stephen W. Carlson, Saint Paul, MN, petitioner pro se.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Saint Paul, MN, for respondent Mark Ritchie.

Charles N. Nauen, David J. Zoll, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, for respondent Minnesota DFL Party.

Alan W. Weinblatt, Weinblatt & Gaylord, PLC, Saint Paul, MN, for respondent Betty McCollum.

## OPINION

PER CURIAM.

On December 21, 2012, Stephen W. Carlson, the Independence Party candidate in the 2012 election for United States House of Representatives for Minnesota's Fourth Congressional District, filed a petition pursuant to Minn.Stat. § 204B.44 (2012), seeking declaratory and injunctive relief. Carlson asserts three claims in his petition. First, Carlson alleges that Minn. Stat. § 202A.16, subd. 2 (2012), which identifies those who can participate in and vote at a precinct caucus, violates his First Amendment rights. Second, he alleges that the Secretary of State improperly withheld from him the e-mail addresses of registered voters in the Fourth Congressional District, thus violating the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2012), and burdening his First Amendment rights to political association and speech. Third, he alleges that the district court's refusal to accept his election contest for filing infringed on his First Amendment right of access to the courts. Because laches bars Carlson's first two claims and his third claim falls outside the scope of Minn.Stat. § 204B.44, we dismiss the petition.

We begin with a discussion of the facts and allegations at issue in each of Carlson's claims. In his first claim, Carlson challenges the statutory eligibility requirements for participation in and voting at a precinct caucus. In every state general election year, Minnesota holds "party" caucuses in each election precinct. Minn.Stat. § 202A.14, subd. 1 (2012). The voting in each political party's caucus is restricted to "[o]nly those persons who are in agreement with the principles of the party as stated in the party's constitution, and who either voted or affiliated with the party at the last state general election or intend to vote or affiliate with the party at the next state general election." Minn.Stat. § 202A.16, subd. 2. Carlson asserts that he does not support certain DFL party principles that he believes promote gender discrimination.[1] Given the eligibility restrictions of section 202A.16, subdivision 2, Carlson alleges that he is unable to associate with DFL voters at DFL precinct caucuses, cannot speak against DFL party principles at those caucuses, and cannot vote at a DFL precinct caucus. Because the statute prohibits such participation, Carlson alleges that Minn.Stat. § 202A.16, subd. 2, violates the First Amendment.

Carlson's second claim is based on data that voters submitted to the Secretary of State. The Secretary of State maintains a statewide voter registration list based on information gathered from registered vot-

---

1. Carlson alleges that Secretary of State Ritchie, by accepting for filing the DFL Party's constitution, which he is required to do, *see* Minn.Stat. § 202A.12, subd. 4 (2012), effectively approved that constitution in his role as the state's chief election officer. Because we dismiss Carlson's first claim based on laches, we do not resolve the merits of this allegation regarding the Secretary of State. The plain language of section 202A.12, however, does not confer approval authority over a party's constitution on the Secretary of State.

ers. *See* Minn.Stat. § 201.021 (2012) (describing the "computerized statewide voter registration list [that] constitutes the official list of every legally registered voter in the state"); Minn.Stat. § 201.071, subd. 1 (2012) (requiring voters, when registering, to provide a name, address, date of birth, residence and identification information, and optionally, a telephone number and e-mail address). A "master list," which includes all information provided by voters, is available to "public officials for purposes related to election administration, jury selection, and in response to [certain] law enforcement inquir[ies]." Minn.Stat. § 201.091, subd. 1 (2012). A separate "public information list," which includes only voters' names, addresses, year of birth, voting history, and if provided, a telephone number, is available for a fee. Minn.Stat. § 201.091, subds. 4–5 (2012).

In mid-October 2012, Carlson bought the public information list for registered voters in his congressional district from the Secretary of State. Before the end of October, Carlson realized that the list he bought did not include e-mail addresses that might have been provided by any of the estimated 380,000 registered voters in that district. Carlson contacted the Secretary's office, which confirmed that optionally disclosed voter e-mail addresses are not part of the public information list as defined by Minn.Stat. § 201.091, subd. 4, and therefore were not on the list sold to Carlson.

On October 30, 2012, Carlson filed a complaint in the United States District Court for the District of Minnesota, alleging that the Secretary of State improperly withheld voter e-mail addresses from the public information list. On November 5, 2012, Carlson moved the federal court for a temporary restraining order requiring the Secretary of State to disclose the voter e-mail addresses before the general elec-tion on November 6. In opposition to the motion, Gary Poser, Director of Elections for the Secretary of State, explained that, while voters might provide an e-mail address when registering to vote, section 201.091, subdivision 4, does not include those e-mail addresses in the definition of the "public information list." He further stated that the Secretary of State has not "sold, distributed, or disclosed" voter e-mail addresses to any candidate. The federal district court denied Carlson's motion, concluding that he was unlikely to succeed on the merits because he "has no right to access to data collected that is not part of the defined public information list," and the Secretary's office had not provided voter e-mail addresses to any other candidate. *Carlson v. Ritchie*, No. 12–CV–2780 MJD/TNL, Order at 4 (D. Minn. filed Nov. 5, 2012) (citing *McGrath v. Minn. Sec'y of State*, No. A11–0613, 2011 WL 5829345 at *5 (Minn.App. Nov. 21, 2011), *rev. denied* (Minn. Feb. 14, 2012)).

In his third claim, Carlson challenges the Ramsey County District Court's refusal to accept his election contest, which he attempted to file under Minn.Stat. ch. 209 (2012). Carlson's election contest was based on what Carlson contended were "deliberate, serious and material violations of Minnesota's election laws" in the 2012 general election. The district court rejected Carlson's election contest filing because Carlson did not pay a filing fee and his application for leave to proceed in forma pauperis was denied.

On December 21, 2012, Carlson filed with this court his petition under Minn. Stat. § 204B.44, raising the three claims described above. On December 26, 2012, we issued an order directing the parties to address whether "laches, mootness, or failure to state a claim upon which relief can be granted" barred Carlson's claims. *Carlson v. Ritchie*, No. A12–2286, Order at

4 (Minn. filed Dec. 26, 2012). Respondents Mark Ritchie, the Minnesota DFL Party, and Representative McCollum each responded and argued that Carlson's claims are barred. Carlson disagrees and argues that he has been diligent in pursuing his claims.[2] He therefore urges the court to order that a trial be held pursuant to Minn.Stat. § 209.12, to allow for evidence to be taken and forwarded to the United States House of Representatives for use as it deems appropriate.

## I.

We turn first to the question of whether laches bars Carlson's claims. Laches is an equitable doctrine that "prevent[s] one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Winters v. Kiffmeyer,* 650 N.W.2d 167, 169 (Minn.2002) (citation omitted) (internal quotation marks omitted). When considering laches, we ask "whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Id.* at 170 (citation omitted) (internal quotation marks omitted); *see also Peterson v. Stafford,* 490 N.W.2d 418, 419 (Minn.1992) (stating the court will examine the petition "from the perspective of whether the applicant acted promptly in initiating proceedings").

By the time Carlson filed his petition with this court, the 2012 election was complete, the results had been canvassed, declared, and certified, and an election certificate had been issued for the elected candidate—Representative McCollum. Carlson's claims, however, primarily challenge events that occurred before the date of the general election on November 6, 2012.

Carlson nevertheless argues that laches should not bar his claims for two reasons. First, he asserts that his diligence must be assessed in light of the limitations period for an election contest. Relying on the 7–day waiting period in Minn.Stat. § 204C.40, subd. 2 (2012), for issuance of the election certificate, Carlson argues that the time for filing his claims was not triggered until November 27, when the State Canvassing Board declared and certified the election results. Because he raised his claims within this 7–day period in his attempted filing with the district court, and because he has otherwise proceeded diligently in bringing his claims to this court, Carlson argues that laches does not bar his claims.

Second, Carlson argues that the Legislature intends for election contests to be brought after an election. He relies on Minn.Stat. § 204B.44, which allows a challenge to "wrongful acts which have occurred," and in particular paragraph (d) of that statute, which allows a challenge to be made to any alleged wrongful act, omission, or error by one charged with "any duty concerning an election." Carlson also urges us to conclude that candidates should not be forced "to take these kinds of issues to court in a campaign" because doing so can have negative repercussions with voters.

Neither reason that Carlson offers persuades us. With respect to Carlson's first argument, we have not previously used a statute of limitations analysis in election contests, and we decline to do so in this case. In the context of election-related challenges, we focus not on a limitations period but on whether a "reason-

---

**2.** Carlson filed a motion for oral argument in this case on January 2, 2013. Because we resolve this case based on the parties' submissions, this motion is moot.

able valid excuse" demonstrates that the petitioner could not have acted more expeditiously. *Marsh v. Holm,* 238 Minn. 25, 28, 55 N.W.2d 302, 304 (1952). This standard, which requires that petitioners act with reasonable diligence in asserting known rights, appropriately promotes certainty and the orderly administration of elections.

For example, in *Clark v. Pawlenty,* we held that petitioners who sought, among other things, to challenge the designation of a judicial candidate as the "incumbent" delayed unreasonably by waiting approximately 7 weeks after the candidate's affidavit of candidacy was filed to assert their claim. 755 N.W.2d 293, 303 (Minn.2008). More recently, we. dismissed a petition seeking to strike a candidate from the primary ballot who allegedly did not reside in the district from which election was sought because the affidavit of candidacy showing the non-residency had been of record for 20 days before the petition was filed. *Larkey v. Ritchie,* No. A12–1064, Order (Minn. filed June 28, 2012).

■ These cases also confirm that, contrary to Carlson's second argument, petitioners cannot wait until *after* elections are over to raise challenges that could have been addressed *before* the election. *See, e.g., Peterson,* 490 N.W.2d at 419 (stating that "[t]he very nature of matters implicating election laws and proceedings routinely requires expeditious consideration and disposition by courts facing considerable time constraints imposed by the ballot preparation and distribution process"). Our prec-

edent focuses on when the petitioner became aware of his rights and whether he was reasonably diligent in pursuing those rights.

Carlson admits that he was aware in 2010 of the DFL Party principles with which he disagrees and that underlie his first claim. Carlson does not indicate when he first became aware of the eligibility requirements for caucus participation that are set out in Minn.Stat. § 202A.16, subd. 2. But these requirements are in the statute and therefore are publicly available. And, as a candidate for elective office in 2010 and 2012, Carlson was presumably aware of these requirements for political party caucuses.

The precinct caucuses for the 2012 election cycle were held over 10 months before Carlson filed his petition with this court.[3] We have found that a delay of 3 months in asserting a known claim is unreasonable, particularly when the challenge is directed at longstanding election law requirements. *Clark,* 755 N.W.2d at 301 (noting that "[t]he processes about which petitioners complain are not new," and rejecting an untimely challenge to an alleged "systemic problem" (internal quotation marks omitted)). We cannot conclude, based on these facts, that Carlson acted diligently or promptly by waiting over 10 months to challenge the limitation imposed on caucus participation in Minn.Stat. § 202A.16, subd. 2. *See Clark v. Reddick,* 791 N.W.2d 292, 294–95 (Minn.2010) (concluding that a delay of more than 2 months in raising ballot challenge was unreasonable and not-

---

**3.** To the extent this claim rests on a challenge to the "DFL" designation that appeared on 2012 election ballots next to Representative McCollum's name, laches plainly bars the claim. Carlson can be presumed to have been aware of that ballot language months before he filed this petition. *See Marsh,* 238 Minn. at 28–29, 55 N.W.2d at 304 (stating that challengers who object to ballot language must "move expeditiously so ballots can be printed and distributed according to the requirements of the law" and thus one "who intends to question the form or contents of an official ballot to be used at state elections must realize that serious delays, complications, and inconvenience must follow any action ... take[n]").

ing that a "greater degree of diligence" is required when "the facts are a matter of public record" (citation omitted) (internal quotation marks omitted)).

■ Similarly, we conclude that Carlson unreasonably delayed bringing his second claim, which is based on allegations that the Secretary of State wrongfully withheld voter e-mail addresses. Carlson admits that he was aware before the general election on November 6, 2012 that he did not receive voter e-mail addresses with the public information list he purchased from the Secretary of State. Indeed, it was the absence of this information that led him to file a complaint in federal district court on October 30, 2012, asserting that this void violated his constitutional rights. We recognize that only days remained until the general election at that point. But Carlson's ability to seek expedited extraordinary relief in the federal district court confirms that he knew the facts necessary to assert his rights and, importantly, that he needed to assert those rights quickly. *See Martin v. Dicklich*, 823 N.W.2d 336, 342 (Minn.2012) (recognizing that "the orderly administration of elections ... cannot wait for convenience"). Given that Carlson had sufficient time to file an action in federal district court and attempt to force the release of e-mails through expedited proceedings, we conclude that he delayed unreasonably here by waiting until after the election to assert the same claim.

■ We reach a different conclusion with respect to Carlson's third claim, alleging that the district court improperly prevented him from filing an election contest. Carlson first asserted this claim 16 days after the district court refused to accept his election contest filing. Carlson had no known right to assert until his filing was refused on December 5, 2012. *See Fetsch v. Holm*, 236 Minn. 158, 163–64, 52 N.W.2d 113, 115–16 (1952) (noting challenger had no right to assert claim until error was discovered on ballot). Given the nature of this claim, we cannot conclude that Carlson's 16–day delay to research and prepare his petition based on this claim was unreasonable.[4]

Because we have concluded that Carlson unreasonably delayed pursuing the first and second claims in his petition, our laches analysis requires that we consider the prejudice, if any, that would result if we granted relief on these claims. *Winters*, 650 N.W.2d at 169 (laches prevents one who has not been diligent "from recovering at the expense of one who has been prejudiced by the delay" (citation omitted) (internal quotation marks omitted)). Carlson seeks a wide range of relief in these claims, from a declaration of the unconstitutionality of Minn.Stat. § 202A.16, subd. 2, to an order directing the DFL Party to amend its constitution, to an order invalidating Representative McCollum's election. Each of these remedies would disrupt the orderly administration of elections. Carlson's request to vacate an election for which he concedes the vote count was accurate is unprecedented and would inflict substantial prejudice on Representative McCollum, the voters, state election officials, and the United States House of Representatives. *Clark*, 755 N.W.2d at 303 ("Given petitioners' unreasonable delay ... and balanced against the significant potential prejudice to respondents, to other election officials, to [the candidate] and potentially to other candidates, and to the electorate, we conclude that it would be inequitable to grant

---

4. Nothing in this opinion should be read to suggest that we would conclude that a 16–day delay is reasonable in all cases. To the contrary, those seeking relief under Minnesota's election laws must move expeditiously to preserve known rights.

the relief sought"). Given Carlson's unreasonable delay and in light of the substantial prejudice to the orderly administration of elections, it would be inequitable to excuse Carlson's delay and grant him relief on the first two claims of his petition. We therefore hold that laches bars the first two claims in Carlson's petition, and we dismiss these claims.

## II.

■ Because we conclude that laches does not bar Carlson's challenge to the district court's refusal to accept his election contest for filing, we next consider whether that claim is properly asserted in a petition invoking this court's jurisdiction under Minn.Stat. § 204B.44. Minnesota Statutes § 204B.44 authorizes proceedings that seek to correct "errors, omissions, or wrongful acts," particularly with respect to election ballots. The "principal purpose" of this statutory remedy "is to provide a mechanism for correcting errors alleged to have occurred before the election, such as ... errors in preparing or printing the official ballot." *Coleman v. Ritchie,* 762 N.W.2d 218, 231 n. 13 (Minn. 2009). Carlson asserts that his challenge to the district court's refusal to file an election contest falls under paragraph (d) of this statute, which permits a challenge to a "wrongful act, omission, or error of ... any other individual charged with any duty concerning an election." Minn.Stat. § 204B.44(d). We disagree.

The "duty" about which Carlson complains in his third claim in the petition is not one "concerning an election." Minn. Stat. § 204B.44(d). The "duty" about which Carlson complains is the district court's duty to accept his election contest filing. But the obligation of the district court to accept court filings cannot be converted into a "duty concerning an election," Minn.Stat. § 204B.44(d), simply because the underlying filing that was not accepted is an election contest. This is so because section 204B.44 is not a broad vehicle through which any conduct with any relationship to an election, however tangential, can be challenged. *Minn. Majority v. Ritchie,* No. A09–0950, Order at 5 (Minn. filed July 22, 2009) (stating that section 204B.44 does not "establish original jurisdiction in this court for any and all disputes ... relate[d] to ... elections in general"). To the contrary, our precedent recognizes that section 204B.44 "provides a remedial process only for correction of the ballot and directly related election procedures." *Clark,* 755 N.W.2d at 299. Carlson's challenge to the district court's refusal to file his chapter 209 election contest does not fit within the narrow parameters we have recognized as within the scope of section 204B.44, and we therefore dismiss this claim.[5]

Petition denied.

ANDERSON, PAUL H., DIETZEN, and STRAS, JJ., took no part in the consideration or decision of this case.

---

5. An election contest under chapter 209 with respect to a congressional race decides only "which party to the contest received the highest number of votes legally cast at the election and is therefore entitled to receive the certificate of election." Minn.Stat. § 209.12. As noted in his election contest filing, Carlson does not dispute the vote count for the election in the Fourth Congressional District. Because we dismiss his claim as outside the scope of Minn.Stat. § 204B.44, we do not decide whether a petition that does not contest which candidate received the higher number of votes can nonetheless be brought simply for the purpose of taking "[e]vidence on any other points specified in the notice of contest, including ... deliberate, serious, and material violation[s] of ... the Minnesota Election Law." Minn.Stat. § 209.12.