**In re Petition of Allan D. HAUGE and Cecilia E. Hauge for Cancellation of Certificate of Title No. 63785,**

and

**In re Petition of Paul W. Howe and Stephanie Howe for Cancellation of Certificate of Title No. 33535,**

and

**Paul W. Howe, et al., Respondents,**

v.

**Allan D. Hauge, et al., Appellants.**

No. A08–0908.

Court of Appeals of Minnesota.

May 26, 2009.

James M. Lockhart, Christopher R. Grote, Karla M. Vehrs, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for respondents Paul W. Howe and Stephanie Howe.

Timothy P. Brausen, St. Louis Park, MN, for appellants Allan D. Hauge and Cecilia E. Hauge.

Considered and decided by
SCHELLHAS, Presiding Judge;
LANSING, Judge; and PORITSKY,
Judge.*

## OPINION

SCHELLHAS, Judge.

This appeal from summary judgment arises out of consolidated district court actions involving boundary-related disputes over registered land. Appellants argue that the district court improperly applied Minn.Stat. § 508.28, when it ruled that appellants were time-barred from challenging a registered land survey. Appellants also argue that the district court erroneously granted summary judgment to respondents, whose ownership claim of a peninsula was based on the registered land survey at issue. Respondents argue that appellants' competing claim of ownership of the peninsula is precluded by the doctrine of laches. We conclude that the district court erred in applying Minn.Stat. § 508.28 as a time-bar to appellants' claim, that laches should be determined in the district court, not on appeal, and that genuine issues of material fact preclude sum-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

mary judgment. Therefore, we reverse and remand.

## FACTS

This appeal concerns a dispute over the ownership of a portion of Washington County land forming a peninsula into Clear Lake. The parties do not dispute that in 1960, Ralph and Ethel Lee received a decree of registration from Washington County District Court covering a parcel of land adjoining Clear Lake and that they thereafter obtained Registered Land Survey (RLS) 34, which encompassed their parcel of registered land. RLS 34 does not show the disputed peninsula.

In 1962, Lees conveyed a portion of their parcel of registered land to Edward and Dorothy Menaldino. The Washington County Registrar of Titles issued a certificate of title to Menaldinos in which the boundary line between Menaldinos' land and Lees' retained land is described as a line 50 feet south of the "North Line of ... U.S. Govt. Lot 3" terminating at "the shore of ... Clear Lake" (Lee–Menaldino boundary line). Menaldinos purchased the land north of the Lee–Menaldino boundary line; Lees retained the land south of the Lee–Menaldino boundary line.

In 1965, Lees obtained RLS 62, which shows that Lees subdivided some of their retained land into individual tracts, labeled Tract A through Tract K. RLS 62 contains greater detail than RLS 34 and shows the disputed peninsula as part of Tract K, but locates the peninsula north of the Lee–Menaldino boundary line and therefore north of Lees' retained land.

In 1986, appellants Allan D. and Cecilia E. Hauge purchased Menaldinos' land located north of Lee–Menaldino boundary line.[1] In January 2007, respondents Paul W. and Stephanie Howe purchased Tract K from Mark and Mary Durfee. Before the purchase, Durfees sued Hauges, seeking, among other things, damages for trespass and a permanent injunction to keep Hauges off the peninsula. In their answer to Durfees' suit, Hauges sought in part to reform RLS 62 "to correct the erroneous inclusion of" the peninsula. Durfees thereafter filed a Petition in Proceedings Subsequent to Initial Registration, seeking cancellation of Hauges' certificate of title and the issuance of a new certificate of title under Minn.Stat. § 508.71 (2008), altering Hauges' certificate of title to exclude the peninsula. After Durfees conveyed Tract K to Howes, Hauges filed a Petition in Proceedings Subsequent to Initial Registration, seeking cancellation of Howes' certificate of title and the issuance of a new certificate of title under section 508.71, altering Howes' certificate of title to exclude the peninsula. The district court consolidated Durfees' suit and both petitions in proceedings subsequent and ultimately issued a temporary injunction after finding that the peninsula was part of Tract K and owned by Howes. The district court ordered Hauges to remove their docks, boats, and other personal property from the peninsula and to otherwise not enter Tract K.

In the district court proceedings following issuance of the temporary injunction, Howes argued that they own the peninsula because Tract K includes it. Hauges argued that they own the peninsula because it is located north of Lee–Menaldino boundary line, was conveyed to Menaldinos by Lees, and was conveyed to them by Menaldinos. The district court granted summary judgment to Howes, ruling that they were "entitled to a [j]udgment as a matter of law as to their claim re-

---

1. Although Menaldinos' certificate of title describes the western boundary of their land as the shore of Clear Lake, Hauges' certificate of title does not describe the western boundary.

garding the validity of RLS 62 and their Certificate [o]f Title # 63785," and that "Tract K, as contained in RLS # 62, was properly platted and is owned in fee simple by the Howes pursuant to Certificate of Title # 63785." The district court issued a permanent injunction against Hauges, dismissed their petition in proceedings subsequent, and dismissed their "causes of action . . . with prejudice and on the merits." The court stated in its accompanying memorandum, in part:

> RLS 62 was recorded in December 1965 "and established the sizes and boundary bearings" of Tract K. On the RLS 62 map, Tract K is depicted as including the peninsula. RLS 62 is valid on its face.

> RLS 62 must be presumed to be accurate and valid because it was prepared by a surveyor based upon personal knowledge of the area at the time of the survey, [and] it was properly reviewed and approved by Forest Lake Township and by Washington County. It was also accepted for registration by the County Registrar of Titles (and was filed and/or registered). RLS 62 was properly performed, approved, and registered.

> The Howes are entitled as a matter of law to rely upon their January 2007 Torrens Certificate of Title describing Tract K by reference to the "plat" of RLS 62 on file and of record.

> . . . .

> The Certificates of Title for Tract K were all prepared, approved, and issued pursuant to *the proceedings for RLS 34 and RLS 62*. It is undisputed that the first Certificate of Title was issued for Tract K over 40 years ago. I[t] is also undisputed that "No action or proceeding for the recovery of any right, title, interest, or estate in registered land adverse to the title established by any original decree of registration" has been brought within "six months from the date of such original decree."

> This attempted claim by the Hauge[ ]s is time barred.

> Hauge[ ]s' claims that the survey supporting RLS 62 is flawed, or that the process was flawed, or that RLS 62 should never have been approved are all the sorts of claims that should have been brought and resolved in or around December, 1965 (*or within 6 months of that time*). Some witnesses are no longer available to testify, the members of the Town Board are no longer to be found (in fact the Town of Forest Lake no longer exist[s] ), the membership of the County Board no longer includes anyone from 1965, the Registrar of Titles is long gone, memories have faded for other witnesses, and crucial documents may have become lost. The statute of limitations was put into the statute to prevent the very types of claims that the Hauge[ ]s now bring. Forty-two years is simply far too long to wait to bring these types of claims.

(Emphasis added.) This appeal follows.

## ISSUE

Did the district court err in granting summary judgment to Howes on the ground that Hauges are time-barred from challenging Howes' ownership of the disputed peninsula under Minn. Stat. § 508.28?

## ANALYSIS

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in applying the law.

*In re Collier,* 726 N.W.2d 799, 803 (Minn. 2007). We review the district court's application of the law de novo when the material facts are not in dispute. *Id.*

In 1960, the combined land now included in Hauges' and Howes' certificates of title was registered by Lees in a court proceeding, pursuant to Minn.Stat. § 508.25. In the original certificate of title issued to Lees in 1960, Certificate of Title No. 9980, the combined land is described as RLS 34. The 1960 decree of registration and RLS 34 encompasses land including the peninsula, but RLS 34 does not show the peninsula. The land encompassed in the 1960 decree of registration and original certificate of title issued to Lees was not the subject of any subsequent Torrens-related proceeding until August 2006, when Durfees, Howes' predecessors in title, filed their petition in proceedings subsequent to initial registration to cancel Hauges' Certificate of Title No. 33535 and to issue a new altered certificate of title. The parties do not dispute these facts.

Minnesota's Torrens statute is found in Minnesota Statutes Chapter 508. Section 508.25 provides:

> Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar. . . .

Minn.Stat. § 508.25 (2008). Section 508.28 provides:

> No decree of registration hereafter entered, and no original certificate of title hereafter issued pursuant thereto, shall be adjudged invalid or set aside unless the action in which the validity of such decree, or of the original certificate of title issued pursuant thereto, is called in question, be commenced, or the defense alleging the invalidity thereof be interposed, within six months from the date of such decree. *No action or proceeding for the recovery of any right, title, interest, or estate in registered land adverse to the title established by any original decree of registration hereafter entered shall be maintained, unless such action is commenced within six months from the date of such original decree.* No action or proceeding for the enforcement or foreclosure of any lien or charge upon or against registered land in existence at the date of any original decree of registration hereafter entered, and which is not recognized and established by such decree, shall be maintained, unless such action or proceeding is commenced within six months from the date of such original decree. No such action or proceeding shall be commenced by any person who is bound by the decree. Nothing herein shall affect any rights already barred when this law takes effect.

(Emphasis added.).

■ A decree of registration is a decree issued by a court, granting a party's application to register title to land. *See* Minn. Stat. § 508.22 (2008) (stating that if "the applicant has title proper for registration . . . [the court] shall make and file its decree therein, confirming the title of the applicant and ordering its registration"). The six-month limitation of actions set forth in section 508.28 applies to decrees of registration and original certificates of title issued pursuant to the decree, not to the

filing of registered land surveys. Thus, the six-month limitation of actions applies to the 1960 decree of registration of Lees' land and the original certificate of title issued to them in 1960. Neither Hauges nor Howes challenge the 1960 decree of registration.

■ Howes argue that Hauges' petition and causes of action are time-barred because the six-month limitation period under section 508.28 runs from the filing of RLS 62 in 1962 or from the first certificate of title issued for Tract K, based on RLS 62. But neither the filing of RLS 62 nor the subsequent issuance of a certificate of title to Tract K arose out of a decree of registration in a proceeding subsequent to initial registration. And chapter 508 establishes no limitation of actions to challenge registered land surveys or to determine legal descriptions or boundary lines not judicially determined in a Torrens proceeding. *See id.;* Minn.Stat. § 508.671 (2008) (providing for determination of boundaries on adjoining registered and non-registered land); *Minneapolis & St. Louis Ry. Co. v. Ellsworth,* 237 Minn. 439, 445, 54 N.W.2d 800, 804 (1952) (stating that the finding of the location of a property line between Torrens-registered property and another property "is not an attack upon the Torrens decree"); *cf. In re Petition of Geis,* 576 N.W.2d 747, 750 (Minn. App.1998) (holding that the court may not, in a proceeding subsequent to initial registration of land, determine boundary lines, if that determination alters legal description of land *as stated in the certificate of title* and thereby attacks the Torrens certificate), *review denied* (Minn. May 28, 1998).

Under Minnesota Torrens law, both Hauges and Howes are entitled to the same protection of their certificates of title

derived from the decree of registration issued in 1960. See Minn.Stat. § 508.25 (providing the same rights to "[e]very person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration"). But the Torrens proceeding that resulted in the 1960 decree of registration, from which both Hauges' and Howes' titles are derived, did not establish the legal description of the peninsula or boundary lines now in dispute. Because the legal description of the peninsula and boundary lines now in dispute were not determined in the 1960 Torrens proceeding nor in any subsequent Torrens proceeding, neither Hauges' nor Howes' petitions or actions to determine the same constitute collateral attacks on the 1960 decree of registration or original certificate of title issued in that proceeding. *See Geis,* 576 N.W.2d at 750; *Ellsworth,* 237 Minn. at 445, 54 N.W.2d at 804 (stating that the finding of the location of a property line between Torrens-registered property and another property does not constitute "an attack upon the Torrens decree"); *cf. Estate of Koester v. Hale,* 297 Minn. 387, 394, 211 N.W.2d 778, 782 (1973) (ruling that issuance of a new certificate excluding land erroneously included in a prior certificate "does not offend the prohibition against opening 'the original decree of registration'"). Conversely, if Hauges' petition was time-barred, Howes' petition also would be time-barred.

Because Hauges' petition and causes of action are not a collateral attack on Howes' certificate of title, and the six-month limitation of actions under section 508.28 does not apply to the filing of RLS 62 or subsequent issuance of certificates of title to Tract K, we conclude that the district court erred in dismissing Hauges' petition

and all causes of action as a matter of law under section 508.28.

■■■■ Howes also argue that the doctrine of laches bars Hauges' challenge to their title. The equitable doctrine of laches prevents the court from granting relief to a party who has "unreasonably delayed the assertion of a legal right and has thereby prejudiced others and made it inequitable for the court to grant the relief requested." *State ex rel. Sviggum v. Hanson,* 732 N.W.2d 312, 317 (Minn.App.2007). The purpose of the doctrine is to prevent a party who has not been diligent in asserting a known right from recovering at the expense of another that has been prejudiced by the delay. *Aronovitch v. Levy,* 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). This court has applied equitable principles to disputes involving registered land. *Hebert v. City of Fifty Lakes,* 744 N.W.2d 226, 233 n. 6 (Minn.2008). But "[w]here both parties are at fault, laches should not be strictly applied." *Indus. Loan & Thrift Corp. v. Benson,* 221 Minn. 70, 73, 21 N.W.2d 99, 101 (1945) (quotation omitted). The district court did not address laches in either of its orders, because it concluded that Hauges' claim was time-barred under the statute. We therefore decline to address Howes' argument that Hauges' claim is precluded by the doctrine of laches. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that appellate courts generally do not consider matters not considered by the district court).

Because summary judgment will be affirmed if it can be sustained on any grounds, *Myers through Myers v. Price,* 463 N.W.2d 773, 775 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991), our conclusion that Hauges' claim is not time-barred does not preclude us from affirming summary judgment if we determine

both that no genuine issues of material fact exist and that the law otherwise requires judgment in Howes' favor.

In arguing for reversal of summary judgment, Hauges cite the supportive affidavits of Michael J. Welling, Washington County Surveyor, and Richard S. Little, Deputy Examiner of Titles for Anoka County and former Deputy Examiner of Titles for Hennepin County, which they submitted to the district court. Howes argue that the affidavits contain inadmissible evidence under Minn. R. Evid. 602 because: (1) neither Welling nor Little had any personal knowledge of the land as it existed in 1965, when RLS 62 was prepared; (2) Hauges did not offer Welling or Little as expert witnesses under Minn. R. Evid. 702; and (3) Little's affidavit includes inadmissible legal opinion. While the district court did not specifically rule on whether the content of the affidavits constitute admissible evidence, it did opine that parts of the affidavits were objectionable and other parts not helpful to the case.

Supporting and opposing affidavits must be made on personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Minn. R. Civ. Pro. 56.05. Because we conclude that, at least in large part, the evidence contained in Welling's and Little's affidavit is admissible, we consider whether the evidence raises a genuine issue of material fact. *See Liberty Mut. Ins. Co. v. Ne. Concrete Prods., LLC,* 756 N.W.2d 93, 104 (Minn. App.2008) (ruling that where the district court did not make an evidentiary ruling with regard to the admissibility of expert testimony, a de novo determination of whether the expert testimony raised a

genuine issue of material fact was appropriate).

■ Welling states in his affidavit that a discrepancy exists between Hauges' and Howes' certificates of title as to the ownership of the peninsula. Attached to Welling's affidavit is a map from the Washington County Surveyor's office that shows the peninsula marked "area of discrepancy." A genuine issue of material fact appears to exist about whether Lees' conveyance to Menaldinos of the land lying north of the line 50 feet south of the "North Line of … U.S. Govt. Lot 3" included the peninsula, which lies north of this line. While Menaldinos' certificate of title defines the western boundary of their property as "the shore of Clear Lake," the record is unclear about where this boundary lies with respect to the peninsula. We conclude that the Welling affidavit presents a genuine issue of material fact as to Hauges' claim of ownership to the peninsula.

Similarly, Little's affidavit states that the drawing of Tract K on RLS 62 is erroneous in that "it does not correctly show the legal description of the land then owned by Lees or as described on [RLS 62]". We conclude that the Little affidavit also presents a genuine issue of material fact as to Hauges' claim of ownership to the peninsula. Because the record presents genuine issues of material fact about the ownership of the peninsula, summary judgment is inappropriate and we need not address whether the law otherwise requires a summary judgment for Howes.

Neither Hauges nor Howes requested a boundary-line determination in their petitions in proceeding subsequent to initial registration, pursuant to Minn.Stat. § 508.671. In the event that the parties seek to amend their petitions to seek a judicial determination of boundaries and the establishment of judicial landmarks, and the district court allows such amendment, further proceedings should be governed by Minn.Stat. § 508.671. In this regard, we note that section 508.671 requires that petitions for the judicial determination of boundaries be referred to the examiner of titles.

## DECISION

Because the six-month limitation of actions under Minn.Stat. § 508.28 applies to a judicial decree of registration and original certificate of title issued under that decree and does not apply to the filing of a registered land survey and certificate of title that is issued based on that survey, and because genuine issues of material fact about the ownership of the peninsula preclude summary judgment in this case, we reverse the district court's grant of summary judgment and remand for further proceedings.

**Reversed and remanded.**