John KALENBURG, et al., Appellants,

v.

Thomas H. KLEIN, et al., Respondents.

No. A13–0707.

Court of Appeals of Minnesota.

May 12, 2014.

Terrance W. Moore, Edward E. Beckmann, Hellmuth & Johnson, PLLC, Edina, MN, for appellants.

Patrick M. O'Donnell, Jacob T. Erickson, Carly West Holler, Smith, Paulson, O'Donnell & Associates, Monticello, MN, for respondents.

Considered and decided by ROSS, Presiding Judge; HOOTEN, Judge; and RANDALL, Judge.[*]

## OPINION

HOOTEN, Judge.

This appeal concerns the interpretation of a residential-property purchase agreement. Appellants challenge the district court's grant of summary judgment in favor of respondents. Appellants argue that there are genuine issues of material fact regarding respondents' efforts to obtain financing and that the district court incorrectly interpreted the purchase-agreement cancellation provisions. Respondents filed a notice of related appeal, challenging the district court's denial of their motions for

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

attorney fees and costs concerning a discovery dispute and sanctions under Minnesota Rule of Civil Procedure 11 and Minnesota Statutes section 549.211, subdivision 3 (2012), as well as the failure of either the district court or the district court administrator to consider their application for taxation of costs and disbursements. Because there is no genuine issue of material fact that respondents used best efforts in their attempt to obtain financing, and because the district court did not misinterpret the purchase-agreement cancellation provisions or abuse its discretion by denying respondents' motions for attorney fees and costs and sanctions, we affirm. But we remand for the district court or the district court administrator to consider appellants' application for taxation of costs and disbursements and the objections raised by respondents.

## FACTS

On January 7, 2012, respondents Thomas and Holly Klein signed a purchase agreement for the purchase of a $740,000 home owned by appellants John and Linda Kalenburg. The purchase agreement provided that the Kleins would pay 20% in cash and finance the remaining 80% of the purchase price. A financing addendum provided that the purchase agreement was contingent on the Kleins' ability to obtain financing and required the Kleins to use best efforts to obtain that financing. The Kalenburgs signed the purchase agreement on January 13. Closing was scheduled for April 30.

On January 10, the Kleins applied for a $592,000 loan with Spectra Financial, Inc., a mortgage broker. Spectra preapproved the Kleins for financing and worked with lender Franklin Bank to obtain financing. Franklin Bank obtained an appraisal that valued the Kalenburgs' home at $360,000. On April 12, Spectra denied the Kleins' application for financing because of the difference between the appraised value of the home and the purchase price. The parties agreed to reschedule closing for May 15 because of the Kleins' difficulty in securing financing.

The Kleins then attempted to obtain financing through U.S. Bank. They submitted the purchase agreement and a loan application using only Holly Klein's name and agreed to pay for a second appraisal. This appraisal, delivered to U.S. Bank on May 8, valued the Kalenburgs' home at $588,000. On May 9, U.S. Bank declined Holly Klein's application because of the difference between the appraised value of the home and the purchase price.

That same day, the Kleins signed and delivered a "Cancellation of Purchase Agreement" form to the Kalenburgs. They also submitted a purchase agreement for a home in Maple Grove for $620,000. Two days later, the Kalenburgs notified the Kleins that they would reduce the purchase price of their home to $588,000. The Kleins declined the offer.

The Kalenburgs sued the Kleins on May 14, alleging one count of breach of contract based on the Kleins' failure to use best efforts to obtain financing. Four days later, the Kleins' attorney notified the Kalenburgs of his intent to move for sanctions under rule 11 of the Minnesota Rules of Civil Procedure and Minnesota Statutes section 549.211, subdivision 3, based on the "bad-faith assertion of claims unsupported by fact or law." The Kalenburgs did not withdraw their complaint, and the Kleins counterclaimed under several theories.

The Kleins closed on the Maple Grove home on June 8, paying $625,000 in cash. That same day, the Kalenburgs filed an amended complaint, again alleging one count of breach of contract based on the Kleins' failure to use best efforts to obtain

financing. The district court ordered discovery to be completed by December 15.

Both sides moved for summary judgment, and the district court granted the Kleins' motion.[1] The Kleins then moved for sanctions under rule 11 and section 549.211. A month after the discovery deadline, the Kalenburgs subpoenaed several witnesses, including the Kleins and their attorneys, to appear for depositions. The Kleins moved for a protective order, to quash the subpoenas, and for attorney fees and costs incurred with bringing the motion. The district court granted the Kleins' motion for a protective order and to quash, but denied their motion for attorney fees and costs. The Kleins requested leave to bring a motion for reconsideration, but the district court denied the request. The district court also denied the Kleins' motion for sanctions. The Kleins filed a notice and application for taxation of costs and disbursements as the prevailing party, and the Kalenburgs objected. There is no evidence in the record that either the district court or the district court administrator considered the Kleins' application or the Kalenburgs' objections.

This appeal follows.

## ISSUES

I. Did the district court err by granting summary judgment in favor of the Kleins?

II. Did the district abuse its discretion by denying the Kleins' motions for attorney fees and costs and sanctions?

III. Did the district court or the district court administrator err by failing to consider the Kleins' application for

taxation of costs and disbursements and the Kalenburgs' objections?

## ANALYSIS

### I.

We review de novo a district court's summary-judgment decision, determining whether the district court properly applied the law and whether there are genuine issues of material fact. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn.2010). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002). No genuine issue of fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted).

### A. Best efforts.

The Kalenburgs argue that the district court erred in granting summary judgment because there are genuine issues of material fact regarding the Kleins' efforts to obtain financing. We disagree.

The purchase agreement requires the Kleins to use best efforts to obtain financing, but does not define best efforts. The parties do not contend that the term is ambiguous. Best efforts is defined as "[d]iligent attempts to carry out an obligation." *Black's Law Dictionary* 181 (9th ed.2009). "Best efforts are measured by the measures that a reasonable person in the same circumstances and of the same nature as the acting party would take." *Id.*

---

1. The district court granted partial summary judgment because neither party addressed one of the Kleins' counterclaims. The parties stipulated to dismiss the remaining counterclaim and the district court dismissed the counterclaim in an order filed on February 26.

The following undisputed facts support the district court's determination that there are no genuine issues of material fact that the Kleins used best efforts to obtain financing: (1) the Kleins applied for financing through Spectra, a mortgage broker, three days after signing the purchase agreement; (2) an appraisal was conducted; (3) Spectra denied financing because the appraisal was lower than the purchase price; (4) the Kleins applied for financing with U.S. Bank; (5) a second appraisal was conducted; (6) U.S. Bank denied financing because the appraisal was lower than the purchase price; and (7) U.S. Bank denied financing just days before the May 15 closing date, which had already been rescheduled due to the Kleins' difficulty in obtaining financing.

The Kalenburgs criticize the Kleins for firing their first broker, failing to seek an industry review of the first appraisal, attempting to obtain financing from U.S. Bank using only Holly Klein's name, and purchasing the Maple Grove home with cash. None of these facts raise genuine issues to be resolved at trial.

The Kalenburgs speculate that the Kleins would have been more likely to obtain financing if they had continued with their first broker or had an industry review of their first appraisal. But they presented no evidence that these courses of action would have been successful. The refusal of U.S. Bank to provide financing was not due to the financial disposition of Holly Klein as the sole applicant. Instead, U.S. Bank denied financing because the appraisal of the home, like their first ap-

praisal, was less than the agreed-upon purchase price. And the Kleins' cash purchase of another home is not probative to their efforts to obtain financing under the provisions of *this* purchase agreement. The parties agreed that the Kleins would use best efforts to obtain financing for 80% of the purchase price with a conventional first mortgage. The Kleins and Kalenburgs did not agree that the Kleins would pay for the Kalenburgs' home in cash.

Because the Kalenburgs did not present evidence creating a genuine issue of material fact as to whether the Kleins used best efforts to obtain financing, we conclude that the district court did not err in granting summary judgment.[2]

### B. Cancellation Provisions.

█ The Kalenburgs contend that even if the Kleins were entitled to cancel the purchase agreement, they failed to cancel according to the purchase-agreement cancellation provisions because, they assert, the Kleins did not obtain a declaratory cancellation under Minnesota Statutes section 559.217 (2012). The district court rejected this argument, concluding that "the [financing addendum] language 'is canceled' unambiguously cancels the Purchase Agreement upon the happening, or lack of the happening, of an event" and that the declaratory cancellation is permitted, but not required.

█ The parties do not dispute that the purchase agreement is a contract. The interpretation of an unambiguous contract is a question of law reviewed de novo.

2. In their brief to this court, the Kalenburgs argue that the Kleins breached the purchase agreement in other ways and were not entitled to cancel the purchase agreement. They also contend that the Kleins were not entitled to cancel the purchase agreement before closing. We do not address these arguments because they were not presented to and considered by the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (1988) (holding that this court generally reviews only those issues that the record indicates were presented to and considered by the district court and that a party may not obtain review by raising the same general issue litigated below but under a different theory).

*Roemhildt v. Kristall Dev., Inc.,* 798 N.W.2d 371, 373 (Minn.App.2011), *review denied* (Minn. July 19, 2011). "The plain and ordinary meaning of the contract language controls, unless the language is ambiguous." *Bus. Bank v. Hanson,* 769 N.W.2d 285, 288 (Minn.2009). In interpreting a contract, we give effect to all of its terms, *Metro. Airports Comm'n v. Noble,* 763 N.W.2d 639, 645 (Minn.2009), and read its terms in the context of the entire contract, *Brookfield Trade Ctr. v. Cnty. of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998).

The financing addendum states, "If Buyer cannot secure the financing specified in this Purchase Agreement, and this Purchase Agreement does not close on the closing date specified, this Purchase Agreement is canceled." The purchase-agreement default provision states:

> If Buyer defaults in any of the agreements hereunder, Seller may terminate this Purchase Agreement under the provisions of MN Statute 559.21. If either Buyer or Seller defaults in any of the agreements hereunder or there exists an unfulfilled condition after the date specified for fulfillment, either party may cancel this Purchase Agreement under MN Statute 559.217, Subd. 3. Whenever it is provided herein that this Purchase Agreement is canceled, said language shall be deemed a provision authorizing a Declaratory Cancellation under MN Statute 559.217, Subd. 4.

Because the phrase "is canceled" appears in the financing addendum, only the final sentence of the purchase-agreement default provision applies here.

These provisions establish that the inability to obtain financing and the failure to close cancels the purchase agreement. In that event, "Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation." The Cancellation of Purchase Agreement does not refer to the statute, and is not created by the legislature, but is a standard form created by the Minnesota Association of Realtors. Put another way, in the event that the Kleins use best efforts to obtain financing, but are unable to secure financing, a declaratory cancellation is not necessary to effectuate cancellation.

But the purchase agreement "authorizes" either the buyer or seller to obtain a declaratory cancellation under section 559.217, subdivision 4, if they so choose. "Authorize" means "[t]o give permission for (something)." *The American Heritage Dictionary of the English Language* 120 (5th ed.2011). Thus, the parties may obtain a declaratory cancellation, but are not required to do so.

Even if section 559.217 applied to this situation, we note that the statute is permissive as well. The statute provides that "[e]ither the purchaser or the seller *may* cancel a purchase agreement for residential real property under this section." Minn.Stat. § 559.217, subd. 2 (emphasis added). Parties "*may* initiate" one of two cancellation procedures upon the default or existence of a condition after the date specified for fulfillment in the terms of a purchase agreement for the conveyance of residential real property. *See* Minn.Stat. § 559.217, subds. 3, 4 (emphasis added). "'May' is permissive." Minn.Stat. § 645.44, subd. 15 (2012). Like the purchase agreement, the statute permits parties to obtain a declaratory cancellation, but it does not require them to do so.

The Kalenburgs assert that "[c]ompliance with the statute is mandatory when parties do not mutually agree to cancel," citing to our decision in *Dimke v. Farr,* 802 N.W.2d 860 (Minn.App.2011), *review denied* (Minn. Nov. 22, 2011). The Kalenburgs misread *Dimke.* In *Dimke,* we interpreted section 559.217, subdivision 4, as expressing a threshold requirement of an

unfulfilled condition before a cancellation notice may be served. 802 N.W.2d at 863. Because the district court failed to consider whether an unfulfilled condition existed, we reversed and remanded. *Id.* at 864. We discern nothing in *Dimke* that requires a declaratory cancellation to effectuate cancellation of a purchase agreement.

The Kalenburgs contend that even if the Kleins effectively canceled the purchase agreement, they "cured" any unfulfilled condition of the purchase agreement under section 559.217, subdivision 3, by reducing the purchase price from $740,000 to $588,000–the value indicated in the second appraisal. This argument fails for several reasons. Section 559.217, subdivision 3, provides for a permissive cancellation "[i]f a default occurs or unfulfilled condition exists ... which *does not* by its terms cancel the purchase agreement." (Emphasis added.) Cancellation under subdivision 3 is not available here because the purchase agreement was canceled by its own terms due to the Kleins' inability to obtain financing. And declaratory cancellation under subdivision 4 does not include a cure provision. Moreover, the "cure" by the Kalenburgs was actually a new offer, which the Kleins were not required to accept.

In sum, the Kleins were not required to obtain a declaratory cancellation under section 559.217. The purchase agreement was canceled when the Kleins, despite their best efforts, were unable to obtain financing.

## II.

■ We review a district court's award of attorney fees and costs and sanctions for an abuse of discretion. *See Brickner v. One Land Dev. Co.*, 742 N.W.2d 706, 711 (Minn.App.2007) (attorney fees and costs), *review denied* (Minn. Mar. 18, 2008); *Whalen v. Whalen*, 594 N.W.2d 277, 281 (Minn.App.1999) (sanctions). A district court abuses its discretion when its decision is based on an erroneous view of the law or is against the facts in the record, or when the district court exercises its discretion in an arbitrary fashion. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn.2011).

■ The district court denied the Kleins' motion for attorney fees and costs associated with bringing the motion to quash because they failed to submit an affidavit supporting their request for attorney fees. The Kleins do not dispute their omission. Instead, they contend that the general practice is to submit the affidavit after the hearing to provide the district court with a single document.

■ The Kleins fail to support this assertion with legal citation or analysis. And a motion for attorney fees in an amount greater than $1,000 "*shall* be accompanied by an affidavit of any attorney of record" establishing, among other things, the work performed, the time spent performing the work, and the hourly rate for the work performed. Minn. R. Gen. Pract. 119.02 (emphasis added); *see also* Minn.Stat. § 645.44, subd. 16 (2012) (defining "shall" as mandatory). "A district court has discretion to strictly enforce or to waive the requirements of rule 119 when considering a motion for attorney fees." *Rooney v. Rooney*, 782 N.W.2d 572, 577 (Minn.App.2010). Because the Kleins failed to include an affidavit in support of their motion, the district court did not abuse its discretion by denying the Kleins' motion for attorney fees and costs incurred for bringing the motion to quash.

■ In rejecting the Kleins' motion for sanctions, the district court reasoned that the Kalenburgs' counsel could have had an objectively reasonable belief that the complaint was well-grounded in fact and law as

a genuine contract dispute. The purposes of rule 11 and section 549.211 are to impose an affirmative duty on attorneys to investigate the factual and legal underpinnings of a pleading and to deter bad-faith litigation. *Kellar v. Von Holtum,* 605 N.W.2d 696, 701 (Minn.2000). In determining whether sanctions are appropriate, the district court analyzes whether the party's conduct was reasonable under the circumstances. *Uselman v. Uselman,* 464 N.W.2d 130, 143 (Minn.1990). Rule 11 and section 549.211 are construed narrowly so as to not deter "legitimate or arguably legitimate claims." *Id.* at 142.

The district court analyzed the relevant facts and caselaw and noted that the Kalenburgs and their attorneys discussed the facts, the law, and damages prior to filing suit. Based on these communications, the district court determined that the Kalenburgs had an objectively reasonable basis to bring their claim for breach of contract against the Kleins. On this record, the district court did not abuse its discretion.

### III.

 "In every action in a district court, the prevailing party ... shall be allowed reasonable disbursements paid or incurred...." Minn.Stat. § 549.04, subd. 1 (2012). The district court has discretion to determine the prevailing party and the amount of costs and disbursements, but has no discretion to relieve the nonprevailing party of its obligation to pay those costs and disbursements. *Dukowitz v. Hannon Sec. Servs.,* 841 N.W.2d 147, 155 (Minn.2014).

The Kleins complied with Minn. R. Civ. P. 54.04(b) in applying for taxation of costs and disbursements. And the record establishes that the Kalenburgs filed objections. But the record contains no ruling by the district court or the district court administrator awarding or denying costs and dis-

bursements. Accordingly, we remand for the district court or the district court administrator to consider the Kleins' application and the Kalenburgs' objections.

### DECISION

Because there is no genuine issue of material fact about whether the Kleins used their best efforts to obtain financing, and we agree that the Kleins were not required to obtain a declaratory cancellation, we affirm the district court's grant of summary judgment in their favor. We also affirm the district court's denial of the Kleins' motions for attorney fees and costs and sanctions. But because the district court or the district court administrator failed to consider the Kleins' application for taxation of costs and disbursements and the Kalenburgs' objections, we remand.

**Affirmed and remanded in part.**