*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0737**

In the Matter of the Petition of
Melvin J. Cummins for an Order
Determining Boundary Lines.

**Filed February 2, 2015
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Hubbard County District Court
File No. 29-CV-11-1453

Thomas B. Olson, Katherine L. Wahlberg, Olson & Lucas, P.A., Edina, Minnesota (for appellant Melvin J. Cummins)

Paul Haik, Krebsbach and Haik, Ltd., Minneapolis, Minnesota (for respondents Randall Urdahl, Anthony Urdahl, and Jill Urdahl)

Considered and decided by Schellhas, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.[*]

## UNPUBLISHED OPINION

**JOHNSON**, Judge

This appeal arises from a boundary dispute. Appellant Melvin J. Cummins seeks to establish that a fence is the boundary between his property and property owned by respondents Randall Urdahl, Anthony Urdahl, and Jill Urdahl (the Urdahls). Cummins's petition is based on the theory of boundary by practical location. Before trial, the district

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

court *sua sponte* concluded that Cummins's petition is barred by the doctrine of laches. The district court subsequently denied the Urdahls' motion for sanctions. We conclude that the district court erred by applying the laches doctrine to bar Cummins's claim. We also conclude that the district court did not err by denying the Urdahls' motion for sanctions. Therefore, we affirm in part, reverse in part, and remand for trial.

## FACTS

The facts relevant to the ultimate determination of this case are relatively complicated. For purposes of this non-precedential opinion, we will provide only an outline of the procedural history of the case and a brief summary of the facts that are necessary to resolve the issues raised on appeal.

Cummins owns a 57-acre parcel of land in Hubbard County that is located north of Sixth Crow Wing Lake and south of state highway 34. Cummins acquired the property in 2001 from Gene Rugroden, who acquired it in 1993 from John and Carol Raun, who acquired it in 1983 from Vernon Vogt, who acquired it in 1962 from Charles and Eva Rohrer, who acquired it in 1953.

The Urdahls own a parcel of land that lies to the west of Cummins's property and is somewhat smaller than Cummins's parcel but runs south to the shoreline of the lake. The Urdahls' parcel is within a development known as North Oaks, which was subdivided by one of their predecessors in interest in the 1980s. The Urdahls acquired the property in 2005 from Robert and Susan Panzer, who acquired it in 1996 and 1997 from Palmer and June Peterson, who acquired it in 1982 from Carl and Emma Knutson, who began acquiring it in 1946.

2

Cummins and the Urdahls share a boundary that runs north and south for 580 feet. The essence of the parties' dispute is the location of that boundary. Cummins commenced this action in November 2011 by filing a petition pursuant to section 508.671 of the Minnesota Statutes. His petition seeks to establish that the boundary between his property and the Urdahls' property is a fence that runs north and south. He relies on the theory of boundary by practical location. The Urdahls contend that the boundary is the government lot line, which is marked by monuments that correspond to the original government survey, and is parallel to and approximately 39 feet to the east of the fence. Thus, the disputed parcel is a rectangle that is 39 feet wide, east to west, and 580 feet long, north to south.

In July 2012, the Urdahls moved to dismiss the petition. The district court denied the motion in October 2012. The Urdahls filed a motion for summary judgment in November 2012, and Cummins filed a cross-motion for summary judgment in December 2012. The district court denied both summary-judgment motions in February 2013.

In July 2013, Cummins renewed his summary-judgment motion. In November 2013, the district court denied Cummins's renewed motion for summary judgment. In addition, the district court *sua sponte* concluded that Cummins's petition is barred by the doctrine of laches. The district court administrator entered judgment for the Urdahls. In December 2013, Cummins moved for reconsideration. The district court denied the motion for reconsideration in March 2014. In the same order, the district court denied the Urdahls' motion for sanctions.

Cummins appeals from the dismissal of his petition, the denial of his motion for reconsideration, and the adverse judgment. The Urdahls cross-appeal from the district court's order denying their motion for sanctions.

## D E C I S I O N

The doctrine of boundary by practical location is used to resolve disputes between private parties regarding a boundary between their respective properties. *Slindee v. Fritch Invs., LLC*, 760 N.W.2d 903, 907 (Minn. App. 2009).

> A party can establish a boundary by practical location in three ways: (1) by acquiescing in the boundary for a sufficient period of time to bar a right of entry under the statute of limitations; (2) by expressly agreeing with the other party on the boundary and then by acquiescing to that agreement; or (3) by estoppel.

*Id.* (citing *Theros v. Phillips*, 256 N.W.2d 852, 858 (Minn. 1977)).

Cummins's petition is based on the theory of boundary by practical location by acquiescence. Acquiescence requires actual or implied consent to some action by the disseizor, such as erecting a fence or some other physical boundary, and acknowledgment of that boundary by the disseized. *LeeJoice v. Harris*, 404 N.W.2d 4, 7 (Minn. App. 1987). The boundary line must be "certain, visible, and well-known" to demonstrate acquiescence in a boundary location. *Ruikkie v. Nall*, 798 N.W.2d 806, 819 (Minn. App. 2011) (quoting *Beardsley v. Crane*, 52 Minn. 537, 546, 54 N.W. 740, 742 (1893)), *review denied* (Minn. July 19, 2011). A person alleging a boundary-by-practical-location claim (hereinafter BPL claim) also must prove "by evidence that is clear, positive, and unequivocal that the alleged property line was acquiesced in for a sufficient length of

4

time to bar a right of entry under the statute of limitations," which is 15 years. *Britney v. Swan Lake Cabin Corp.*, 795 N.W.2d 867, 872 (Minn. App. 2011) (quotations omitted); *see also* Minn. Stat. § 541.02 (2014).

## I. Laches

Cummins argues that the district court erred by concluding that his BPL claim is barred by the doctrine of laches. Cummins challenges the district court's decision on both procedural and substantive grounds. As a matter of procedure, he contends that the district court erred by not giving him notice that it would consider disposing of the case before trial based on laches. Indeed, the Urdahls did not have a motion pending before the district court, and they had not previously made a motion based on laches, though they had pleaded laches as an affirmative defense in their answer. As a matter of substance, Cummins contends that the doctrine of laches does not apply. We will begin our analysis by considering Cummins's substantive argument.

"Laches is an equitable doctrine that prevents one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Carlson v. Ritchie*, 830 N.W.2d 887, 891 (Minn. 2013) (quotation omitted). The application of the doctrine of laches usually depends on the facts of the case. *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). In deciding whether to apply laches, a court must determine "whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Carlson*, 830 N.W.2d at 891 (quotation omitted). However, "lapse of time is only one of the elements to be

5

considered . . . [as] [m]ere delay does not constitute laches, unless the circumstances were such as to make the delay blamable." *Elsen v. State Farmers Mut. Ins. Co.*, 219 Minn. 315, 321, 17 N.W.2d 652, 656 (1945) (internal citation and quotation omitted). "[A] party is not guilty of laches until he discovers the mistake, or until he is chargeable with knowledge of facts from which, in the exercise of proper diligence, he ought to have discovered it." *Clark v. Reddick*, 791 N.W.2d 292, 294 (Minn. 2010) (quotation omitted). Laches is not "'a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced.'" *Kahnke v. Green*, 695 N.W.2d 148, 152 (Minn. App. 2005) (emphasis omitted) (quoting *Ward v. Sherman*, 192 U.S. 168, 177, 24 S. Ct. 227, 230 (1904)). This inequity must be "'founded upon some change in the condition or relations of the property or the parties.'" *Id.* (quoting *Ward*, 192 U.S. at 177, 24. S. Ct. at 230). Laches applies if "'a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired.'" *Id.* at 153 (quoting *Ward*, 192 U.S. at 177, 24 S. Ct. at 230). This court applies an abuse-of-discretion standard of review to a district court's summary-judgment decision based on laches. *Jackel v. Brower*, 668 N.W.2d 685, 690 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003); *see also Lloyd v. Simons*, 97 Minn. 315, 317, 105 N.W. 902, 903 (1906).

A.    **Torrens Registration System**

The district court's laches analysis was based in substantial part on the fact that the Petersons and Emma Knutson had registered the North Oaks subdivision with Hubbard

6

County's Torrens registration system. The district court reasoned that the registration conclusively established the boundary between the parties' properties as the government lot line. In its order denying Cummins's motion for reconsideration, the district court stated that "boundary lines can be determined and established pursuant to an initial Torrens registration proceeding" and, thereafter, "a petition which seeks to alter those boundaries [under section 508.671] is an attack upon the certificate of title of the adjoining lands."

The district court's analysis is incorrect. The Torrens system is a system of title registration that simplifies the conveyance of land. *Ruikkie*, 798 N.W.2d at 820; *see also generally* John L. McCormack, *Torrens & Recording: Land Title Assurance in the Computer Age*, 18 Wm. Mitchell L. Rev. 61 (1992). The registration system provides a means to determine the state of a property's title through the examination of one document, the certificate of title. *Id.* at 80. Notwithstanding the purpose of the Torrens system, a Torrens certificate does not conclusively establish the boundaries of a parcel. Under the Torrens Act,

> No title to registered land in derogation of that of the registered owner shall be acquired by prescription or by adverse possession, but the common law doctrine of practical location of boundaries applies to registered land whenever registered. Section 508.671 shall apply in a proceedings subsequent to establish a boundary by practical location for registered land.

Minn. Stat. § 508.02 (2014). Cummins filed a petition to determine boundary lines pursuant to section 508.671, which provides:

7

> An owner of registered land having one or more common boundaries with registered or unregistered land or an owner of unregistered land having one or more common boundaries with registered land may apply by a duly verified petition to the court to have all or some of the common boundary lines judicially determined.

Minn. Stat. § 508.671, subd. 1 (2014). This court has held that boundary issues may be determined by proceedings under section 508.671:

> The registration of title to land does not in and of itself eliminate questions of survey or boundary. Neither a plat nor a registered land survey constitutes a proceeding subsequent requiring notification of other potentially interested parties. We also note that plats of registered land are not the equivalent of registered land surveys . . . . The issuance of certificates of title simply reflects the transactions of Torrens land using platted or other legal descriptions with whatever problems infect them.
>
> Furthermore, section 508.671 expressly permits a district court to alter existing certificates of title based on its establishment of the boundaries. Once the district court issues an order judicially determining boundaries, the registrar of titles enters a memorial on the certificates of title to the adjoining lands showing which boundary lines have been determined. Caselaw provides that such subsequent determination of boundaries does not constitute an impermissible attack on the Torrens system.

*Ruikkie*, 798 N.W.2d at 820-21 (citations omitted); *see also* Minn. Stat. § 508.671, subd. 2. These authorities demonstrate that the Torrens registration system does not preclude Cummins from asserting a BPL claim.

The district court relied on *In re Hauge*, 766 N.W.2d 50 (Minn. App. 2009), in determining that Cummins's petition was an attack on the certificate of title. In *Hauge*, this court concluded that a petition in proceedings subsequent to an initial registration

8

was not a collateral attack on a certificate of title because the boundaries of the adjoining registered land had not been determined in a Torrens proceeding in which the adjoining land was registered. *Id.* at 55-56. In this case, the district court considered this court's conclusion in *Hauge* in the converse, determining that a section 508.671 petition that seeks to alter a boundary line that was determined in an initial Torrens proceeding is a *de facto* attack on the certificate of title. To the contrary, the applicable rule of law is reflected in *Ruikkie*, which recognizes that "[t]he registration of title to land does not in and of itself eliminate questions of survey or boundary." 798 N.W.2d at 820.

Thus, the district court erred to the extent that its laches analysis gave conclusive effect to the Torrens registration.

## B. Delay

The district court's laches analysis also is based in substantial part on its determination that Cummins unreasonably delayed in seeking relief.

The district court's analysis of Cummins's purported delay in seeking relief is based on two prior events. First, one of Cummins's predecessors in interest, Rugroden, developed a subdivision in the 1990s that is known as Skie Lark, which lies to the south of Cummins's property. The surveyor whom Rugroden hired to plat the Skie Lark subdivision determined that the western boundary of the subdivision was the same government lot line, albeit a segment of the line that lies to the south of Cummins's property. Second, Cummins was a party to a different lawsuit involving a segment of the same government lot line that lies to the north of his property. In 2007, Lisa Smith, who owns property to the west of Cummins's property and to the north of the Urdahls'

9

property, sued Cummins for trespass and ejectment, relying on the government lot line. Cummins alleged a counter-claim of boundary by practical location, relying on the fence. After a trial, the district court presiding over that case found in favor of Cummins on his counter-claim and entered judgment in his favor.

In this case, the district court reasoned that, when the Skie Lark subdivision was platted and registered in 1993 and 1994, Cummins's predecessors in interest "had ample notice of the constructive fraud that occurred during the North Oaks Torrens Registration," such that they should have inquired about the boundary line at that time. The district court also reasoned that Cummins should have inquired into the matter after he hired a surveyor to conduct surveys of his property in 2003 and 2005. The district court further reasoned that Cummins should have sought to join the Urdahls in the previous lawsuit that was commenced by Smith.

Cummins's primary contention with respect to the issue of delay is that the doctrine of laches is incompatible with the theory of boundary by practical location, which cannot be alleged unless and until 15 years have passed. *See* Minn. Stat. § 541.02. To prevail on a BPL claim, a plaintiff must prove clearly, positively, and unequivocally that the alleged property line was acquiesced to for the statutorily required 15-year period. *Britney*, 795 N.W.2d at 872. In light of the requirement of a 15-year period of acquiescence, a period of acquiescence that is longer than 15 years presumably would make a BPL claim stronger. The district court's reasoning is based on the premise that, at some point in time beyond the 15-year minimum, a BPL claim becomes weaker by the passage of time. Neither the district court nor the Urdahls have identified any caselaw in

10

support of such reasoning. It appears that the district court's laches analysis is simply inconsistent with the law of boundary by practical location. If so, that reason alone would compel the conclusion that the district court erred by concluding that Cummins's BPL claim is barred by laches.

But we need not decide whether laches ever can be applied to a BPL claim because it is sufficient to resolve this appeal on the facts of this case. Even if we were to accept the district court's premise, we nonetheless would conclude that Cummins did not unreasonably delay the commencement of this action to such an extent that dismissal is appropriate. For laches to apply, there must exist "such an unreasonable delay in asserting a known right . . . as would make it inequitable to grant the relief prayed for." *Harr v. City of Edina*, 541 N.W.2d 603, 606 (Minn. App. 1996) (quotation omitted). Mere delay is not enough; the delay must be "blamable." *See Elsen*, 219 Minn. at 321, 17 N.W.2d at 656 (quotation omitted). In this case, the record does not support a determination that Cummins engaged in unreasonable delay. Cummins's predecessors cannot be blamed for not filing a petition sooner because there is no conclusive evidence that they actually knew of the North Oaks Torrens registration or were informed that the fence was not shown on the North Oaks plat as the boundary. Furthermore, the circumstances do not compel the conclusion that Cummins unreasonably delayed in pursuing the action. He received survey certificates showing the government lot line as the surveyed boundary in 2003 and 2005. Smith commenced her action against Cummins in 2007, and that action was not concluded until 2008. Cummins commenced the present

11

action only three years later.  In the context of a BPL claim, these facts do not support a finding of unreasonable delay.

Cummins further contends that the district court did not identify any prejudice suffered by the Urdahls due to delay.  Because we have concluded that Cummins did not unreasonably delay in commencing this action, we need not go further in our laches analysis.  *See Modjeski v. Federal Bakery of Winona, Inc.*, 307 Minn. 432, 439, 240 N.W.2d 542, 546 (1976).  Nonetheless, Cummins's contention concerning prejudice is valid.

> It is a circumstance of importance, in determining whether a plaintiff has been guilty of laches, that the situation of the parties has changed, or that material witnesses have died, or that because of lapse of time evidence has otherwise been lost, so that the ascertainment of the essential facts is made difficult, and the exact facts upon which the rights of the parties depend must necessarily be in doubt.

*Aronovitch*, 238 Minn. at 243, 56 N.W.2d at 574.  Remnants of the fence still are visible.  Although the Knutsons died before commencement of the present action, Cummins produced affidavits executed by a son and grandson stating that the Knutsons believed the fence to be the boundary.  Although the surveyor hired by the Petersons to plat North Oaks died before commencement of the present action, his survey survives him.  The Urdahls have not identified any evidence that has been lost due to the lapse of time or identified any way in which ascertaining the essential facts has been made more difficult by delay.

Thus, we conclude that the district court erred by concluding that Cummins's petition is barred by the doctrine of laches.

12

## C.    Alternative Grounds

The Urdahls argue that, even if the district court erred by dismissing the petition on the basis of laches, this court nonetheless should affirm the judgment on any of three alternative grounds, each of which the Urdahls presented to the district court in their motion for summary judgment.[1]

### 1.    Section 508.28

The Urdahls argue that Cummins's petition is barred by the six-month limitations period in section 508.28.  The Urdahls made this argument in their motion to dismiss. The district court concluded that section 508.28 does not bar Cummins's petition.

The statute provides, in relevant part:

> No action or proceeding for the recovery of any right, title, interest, or estate in registered land adverse to the title established by any original decree of registration hereafter entered shall be maintained, unless such action is commenced within six months from the date of such original decree.

---

[1]The Urdahls are entitled to appellate review of the district court's denial of their motion for summary judgment because they presented certain arguments to the district court and are re-asserting those arguments on appeal as alternative grounds for upholding the district court's judgment.  *See Day Masonry v. Independent Sch. Dist. 347*, 781 N.W.2d 321, 331 (Minn. 2010).  We note that Cummins argues that the district court erred by denying his motion for summary judgment.  As a general rule, an order denying a motion for summary judgment is not reviewable on appeal, except "on an appeal from a judgment."  *Thuma v. Kroschel*, 506 N.W.2d 14, 19 (Minn. App. 1993), *review denied* (Minn. Dec. 14, 1993).  But to be reviewable, the order denying the summary-judgment motion must "involv[e] the merits or affect[] the judgment."  Minn. R. Civ. App. P. 103.04.  The issues on which Cummins seeks appellate review (*i.e.*, the elements of proof on his BPL claim) are different from the reasons why the district court entered judgment in the Urdahls' favor (*i.e.*, laches).  Thus, we may not review the district court's denial of Cummins's motion for summary judgment.

13

Minn. Stat. § 508.28 (2014). The Urdahls contend that Cummins's petition attacks the Torrens registration of North Oaks by attempting to change the boundary line from the government lot line to the fence.

Cummins is not challenging the registration decree or the certificate of title issued pursuant to the decree. *See Minneapolis & St. Louis Ry. Co. v. Ellsworth*, 237 Minn. 439, 444-45, 54 N.W.2d 800, 804 (1952). Rather, Cummins is requesting a determination of a boundary by practical location. "The six-month limitation of actions set forth in section 508.28 applies to decrees of registration and original certificates of title issued pursuant to the decree, not to the filing of registered land surveys." *Hauge*, 766 N.W.2d at 54-55. Contrary to the Urdahls' argument, "chapter 508 establishes no limitation of actions to challenge registered land surveys or to determine legal descriptions or boundary lines not judicially determined in a Torrens proceeding." *Id.* at 55. Thus, the district court did not err by concluding that the six-month limitation in section 508.28 does not bar Cummins's petition.

### 2. *Section 541.02*

The Urdahls also argue that Cummins cannot satisfy the requirements of section 541.02. The Urdahls made this argument in their summary-judgment motion. The district court concluded that the petition is not barred by section 541.02.

The statute provides, in relevant part:

> No action for the recovery of real estate or the possession thereof shall be maintained unless it appears that the plaintiff, the plaintiff's ancestor, predecessor, or grantor was seized or possessed of the premises in question within 15 years before the beginning of the action.

Minn. Stat. § 541.02. The Urdahls contend that Cummins and his predecessors did not possess the disputed property for a continuous 15-year period before Cummins's commencement of the action.

Contrary to the Urdahls' argument, possession is not an element of establishing a BPL claim. *See Pratt Inv. Co. v. Kennedy*, 636 N.W.2d 844, 849 (Minn. App. 2001). "To acquire land by practical location of boundaries by acquiescence, a person must show by evidence that is clear, positive, and unequivocal that the alleged property line was acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations," which is 15 years. *Britney*, 795 N.W.2d at 872 (quotations omitted); *see also Amato v. Haraden*, 280 Minn. 399, 403, 159 N.W.2d 907, 910 (1968). "The acquiescence required is not merely passive consent, but conduct from which assent may be reasonably inferred." *Pratt*, 636 N.W.2d at 850. Whether Cummins and his predecessors possessed the property for 15 years immediately before the commencement of the suit is not dispositive. *See id.* at 849.

The record contains substantial evidence of acquiescence, beginning no later than when the Knutsons purchased the property. Cummins introduced evidence that the preceding owners of both Cummins's property and the Urdahls' property treated the fence as the boundary line. For example, he introduced affidavits executed by a son and a grandson of the Knutsons, who stated that the Knutsons always regarded the fence as their eastern boundary and relied on the fence to contain their herd of cattle. Cummins also introduced an affidavit of Vogt, who purchased the property in 1962, who stated that

15

he believed that the path along the east side of the fence was on his property and that he posted "No Trespassing" signs to deter the public from using the path to access the lake. Cummins's evidence spans a period of more than 15 years. Thus, the district court did not err by concluding that section 541.02 does not bar Cummins's petition.

### 3.    *Monuments*

The Urdahls further argue that Cummins's petition failed to state a claim upon which relief can be granted because the monuments that follow the government land survey are conclusive evidence of the boundary. The Urdahls made this argument in their motion to dismiss. The district court concluded that Cummins's petition stated a claim for relief, notwithstanding the monuments marking the government lot line.

The Urdahls rely on *Wojahn v. Johnson*, 297 N.W.2d 298 (Minn. 1980), in which the supreme court stated, "When a fence is claimed to represent a boundary line under an acquiescence theory, one of the most important factors is whether the parties attempted and intended to place the fence as near the dividing line as possible." *Id.* at 305. The district court in that case ultimately found that the plaintiff's evidence was too "amorphous" to support a finding of boundary by practical location, and the supreme court affirmed. *Id.* The procedural posture of this case, however, is different from that of *Wojahn*, in which the appeal arose after a trial. *Id.* at 302. Because the Urdahls seek review of a ruling on their motion to dismiss, the issue for the district court was whether the petition states a claim for relief. *See* Minn. R. Civ. P. 12.02(e); *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 604 (Minn. 2014). Cummins's petition satisfies this standard, notwithstanding the monuments marking the government lot line, because the applicable

16

caselaw allows Cummins to pursue a BPL claim despite the existence of the monuments. *See Phillips v. Blowers*, 281 Minn. 267, 269, 161 N.W.2d 524, 526 (1968); *see also Wojahn,* 297 N.W.2d at 305. Thus, the district court did not err by not dismissing the Cummins's petition on this ground.

In sum, the district court erred by entering judgment in favor of the Urdahls. Cummins's BPL claim is not barred by laches, and there are no alternative grounds on which to affirm the judgment. Thus, the matter is remanded to the district court for trial on the merits.

## II. Motion for Sanctions

The Urdahls argue that the district court erred by denying their motion for sanctions. Their motion was based on rule 11 of the Minnesota Rules of Civil Procedure and section 549.211, subdivision 2, of the Minnesota Statutes. The purpose of these two provisions is "to impose an affirmative duty on attorneys to investigate the factual and legal underpinnings of a pleading and to deter bad-faith litigation." *Kalenburg v. Klein*, 847 N.W.2d 34, 42 (Minn. App. 2014). A district court should not impose sanctions if "a competent attorney could form a reasonable belief a pleading is well-grounded in fact and law." *Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425, 432 (Minn. 2000) (quotation omitted), *review denied* (Minn. Apr. 18, 2000). This court applies an abuse-of-discretion standard of review. *Id.* at 145.

In this case, the Urdahls contend that Cummins did not engage in an investigation of the boundary lines before filing his petition, made contradictory statements during the course of litigation, and failed to introduce meaningful evidence demonstrating that the

fence should be the boundary line. The district court denied the motion on the grounds that Cummins previously had prevailed in asserting a BPL claim against Smith, whose property is along the same fence to the north of the Urdahls. The district court's reasoning is sound and is supported by the record. The district court had valid grounds for finding that Cummins believed that he had a legal basis and a factual basis for his petition and for finding that Cummins did not act in bad faith. *See Whalen v. Whalen*, 594 N.W.2d 277, 282 (Minn. App. 1999). Throughout his deposition, Cummins repeatedly stated that he believed the fence to be the boundary line, based on acquiescence, regardless of the land surveys. In addition, Cummins introduced the deposition testimony of non-parties who expressed the belief that the fence is the boundary. Moreover, we have concluded in this opinion that Cummins's BPL claim is not barred by laches. Thus, the district court did not err by denying the Urdahls' motion for sanctions.

**Affirmed in part, reversed in part, and remanded.**